IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-434-M

SHARON ALEXANDER,

Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-14, -16]. Claimant Sharon Alexander ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that this matter be remanded for further consideration.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB and SSI on January 20, 2022, alleging disability beginning March 26, 2020. (R. 24, 257–67). The claims were denied initially and upon reconsideration. (R. 24, 99–150). A hearing before an Administrative Law Judge ("ALJ") was held on May 6, 2024, at which Claimant, with an attorney representative, and a vocational expert ("VE") appeared and testified. (R. 49–79). On July 17, 2024, the ALJ issued a decision denying Claimant's request for benefits. (R. 24–41). On May 23,

2025, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). . This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(c)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date of March 26, 2020. (R. 26). Next, the ALJ determined Claimant had the following severe impairments: obesity, degenerative disc disease, peripheral neuropathy, HIV infection, irritable bowel syndrome, hypertension, osteoarthritis of the right knee,

major depressive disorder, anxiety disorder, and post-traumatic stress disorder. (R. 26). The ALJ also found a lack of sufficient evidentiary basis for finding the following impairments were severe: bilateral hearing loss, mild trochanteric bursitis of the right hip, osteoarthritis of the left knee; or that the following impairments were medically determinable: hypothyroidism, nausea, plantar fasciitis, mitral valve regurgitation, heart murmur, and shortness of breath. (R. 27–28). At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 28–32). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself; and mild limitations in interacting with others. (R. 31).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following additional limitations:

> [T]he claimant can frequently but not constantly push, pull, or operate foot controls with both lower extremities—this is due to degenerative joint disease of both knees. The claimant can frequently climb ramps and occasionally climb stairs but never climb ladders, ropes, or scaffolding—due to back pain and knee pain. The claimant can frequently stoop or kneel and occasionally crouch or crawl. The claimant must avoid concentrated exposure to vibrating tools and/or surfaces—this is due to neuropathy. The claimant must avoid concentrated exposure to workplace hazards as those terms are defined in the Selected Characteristics of Occupations. The claimant must also avoid concentrated exposure to extreme heat—these are both due to hypertension. The claimant can understand, remember, and carry out instructions for simple, routine tasks not subject to specific production requirements, such as assembly-line work. The claimant has the ability to maintain concentration, persistence, and pace for two-hour segments for completion of such

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

> tasks, assuming normal 15-minute morning and afternoon breaks and a 30-minute lunch break. The claimant can interact frequently with supervisors and occasionally with co-workers and with the public. Finally, the claimant has the ability to adapt to workplace changes involving simple work-related decisions. The claimant must also be allowed to use a cane for ambulation in the workplace; the other hand is free for carrying light objects.

(R. 32–40). In making this assessment, the ALJ found Claimant's statements regarding her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 33). At step four, the ALJ concluded that Claimant had no past relevant work. (R. 40). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 40–41).

## V. DISCUSSION

Claimant contends that in formulating the RFC the ALJ erred by failing to perform a function-by-function evaluation of Claimant's ability to stand and walk. Pl.'s Br. [DE-14] at 5–12. The Commissioner contends the ALJ's decision allows for meaningful review and is supported by substantial evidence. Def.'s Br. [DE-16] at 6–15.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions' listed in the regulations."[2] *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

By limiting Claimant to light work, the ALJ found Claimant could stand and/or walk for six hours in an eight-hour workday despite having a combination of back and knee impairments.[3] (R. 26, 32). Claimant argues that the ALJ failed to sufficiently explain this finding, which is significant because if limited to a sedentary range of exertion Claimant would have been found disabled under the medical vocational guidelines. Pl.'s Br. [DE-14] at 5–8 (citing 20 C.F.R. pt. 404, subpt. P, App. II § 201.12). The Commissioner argues that the ALJ's discussion of evidence

---

[2] The regulation recognizes that "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [the] ability to do past work and other work." 20 C.F.R. §§ 404.1545(b), 416.945(b).

[3] "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983); *see also* SSR 83-14, 1983 WL 31254 at *4 (Jan. 1, 1983) ("The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday.").

of limited abnormal findings related to Claimant's gait and intermittent treatment are substantial evidence sufficient to support the ALJ's RFC. Def.'s Br. [DE-16] at 14–15.

In formulating the RFC, the ALJ acknowledged Claimant's allegation that she was unable to work due to a combination of neuropathy, HIV infection, anxiety, stress, a heart murmur, post-traumatic stress disorder, depression, mitral valve regurgitation, arthritis, bursitis, irritable bowel syndrome, plantar fasciitis, nausea, bilateral hearing loss, hypertension, chronic pain, shortness of breath, and hypothyroidism. (R. 33). However, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms to not be fully consistent with the medical evidence of record. *Id.*

The ALJ next summarized Claimant's treatment records by impairment, as opposed to strictly chronologically, appearing to highlight evidence that would support the RFC limitations prescribed, and describing which limitation was prescribed, if any, to account for that impairment. In August 2021, Claimant presented with numbness in both legs, resulting in her being "recognized as having" neuropathy secondary to HIV infection. (R. 33, 666–67). However, in January 2024, electromyogram testing of Claimant's legs showed no sensory deficits. (R. 33, 1509). Based on these findings the ALJ concluded Claimant has *some* neuropathy symptoms secondary to her HIV infection. (R. 33). This is in part why the ALJ included limitations on the use of foot controls, due to her neuropathy symptoms as well as her right knee degenerative joint disease. *Id.*

The ALJ next addressed Claimant's knee and back impairments. (R. 34). In June 2021, Claimant complained of decreased range of motion in her right knee and pain in her lumbar spine. (R. 34, 552). The ALJ noted at the same visit Claimant's straight leg raise test results were negative, yet she was still diagnosed with lumbar spine radiculopathy. (R. 34, 555, 558). The ALJ next noted in March 2022, Claimant reported "doing well except for arthritis in knees." (R. 34, 1019).

At treatment visits in January, February, and April of 2024, Claimant denied having any "lower extremity radicular symptoms." (R. 34, 1514, 1519, 1525, 1886).

In June 2020, radiological imaging revealed no "significant degenerative changes" in Claimant's knees. (R. 34, 838). The ALJ recounted that Claimant's knees were "[n]ormal appearing" in July 2020. (R. 34, 746). In March 2021, Claimant's knees both appeared normal and without swelling. (R. 34, 716). In June 2021, Claimant complained of decreased range of motion in her knees and rated her symptoms as mild-moderate with pain at a 7/10. (R. 34, 552). At the same appointment Claimant's physical exam showed normal ranges of motion in the knees, a normal gait, normal leg strength, and swelling and tenderness in the right knee; still, she received a steroid injection in her knee at that time. (R. 34, 555–58). The ALJ further noted Claimant was referred to physical therapy and considered a potential candidate for an MRI if her condition did not improve. (R. 34). Considering Claimant never got an MRI, the ALJ concluded this tended to show the physical therapy was at least moderately successful. (R. 34). In September 2022, an examiner noted Claimant had difficulty squatting and rising due to knee and back problems. (R. 35, 932, 936). In November 2022, Claimant stated she needed another steroid shot in her right knee. (R. 35, 1001). In June 2023, Claimant had normal right knee strength, and in October 2023, Claimant exhibited full bilateral ranges of motion in the knees. (R. 35, 1265, 1723).

In January 2024, Claimant walked with a cane, had an antalgic gait, and full strength in each leg. (R. 35, 1516, 1523). Later that same month Claimant had normal right knee strength and a normal gait (R. 35, 1717). In February 2024, Claimant was noted to occasionally use a cane and reporting a 5/10 for her knee pain. (R. 35, 1529, 1542). Lastly, the ALJ noted that Claimant took a trip to Hawaii in March 2024, after exhibiting a normal gait and station at a medical appointment. (R. 35, 1572, 1883).

The ALJ concluded that "the combined effects of the [C]laimant's right knee osteoarthritis, degenerative disc disease, and neuropathy would not prevent the [C]laimant from performing work with the postural and exertional limitations indicated in the residual function capacity above." (R. 35). This is as close as the ALJ comes to providing a logical explanation of her conclusion that Claimant can walk or stand for six hours out of an eight-hour workday as required to perform light work. Although the ALJ cited evidence that tends to show Claimant's impairments have been documented as having inconsistent severity, there is no indication of how these facts demonstrate Claimant can walk for more than fifteen minutes, as she indicated in her hearing testimony, much less walk or stand for six hours a day. (R. 66, 326); *see Monroe*, 826 F.3d at 189–90 (finding although "[t]he ALJ cited evidence that he appeared to believe tended to discredit [the claimant's] testimony" of extreme fatigue, the ALJ failed to indicate how any of those facts discredited the claimant's testimony.).

The Commissioner asserts "the ALJ laid out the evidence of record, explained her evaluation of the evidence, and reached the conclusion that Plaintiff remained able to perform light exertional work—and the standing and walking inherent therein—over the course of a well-reasoned decision." Def.'s Br. [DE-16] at 10 (citing R. 24–41). However, the Commissioner is unable to cite to any point in the opinion where the ALJ explained why Claimant would be capable of walking or standing up to six hours in an eight-hour workday. While the Commissioner reiterates that there is no *per se* rule in the Fourth Circuit that requires remand when an ALJ fails to perform an explicit function-by-function analysis, *id.* (citing *Mascio*, 780 F.3d at 636), remand is required where a court is "left to guess about how the ALJ arrived at [her] conclusions on [a claimant's] ability to perform relevant functions." *Mascio*, 780 F.3d at 637.

Here, although the ALJ cited record evidence relating to Claimant's impairments, there is

no logical explanation, or narrative discussion, relating the cited record evidence to the ALJ's conclusion that Claimant can walk or stand up to six hours during an eight-hour workday. "[A] proper RFC analysis" proceeds in the following order: "(1) evidence, (2) logical explanation, and (3) conclusion." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)). "[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311. Even turning to the opinion evidence, again there is no further explanation as to the ALJ's conclusion concerning Claimant's ability to stand and walk. The ALJ found any opinion that highlighted Claimant's limitations standing or walking unsupported by the record because it was inconsistent with observations of Claimant's normal gait. (R. 37, 39). In fact, the ALJ found opinion evidence that suggested Claimant could perform medium work not consistent with the medical evidence due to the occasional observations in the record of Claimant exhibiting an antalgic gait. (R. 39, 1264–65, 1516, 1523). Medium work, like light work, requires standing or walking for a total of approximately six hours in an eight-hour workday. SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983).

Furthermore, the ALJ concluded Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence, but there is no explanation to support that conclusion and no summary of what Claimant testified at the hearing regarding the limiting effects of her symptoms. It is particularly problematic that the ALJ failed to discuss Claimant's testimony regarding her limitations, (R. 66), "where the Fourth Circuit has repeatedly admonished the agency for failing to adequately consider a Claimant's subjective statements regarding their limitations." *Mills v. Bisignano*, No. 5:25-CV-89-RJ, 2026 WL 581199, at *5 (E.D.N.C. Mar. 2, 2026) (citing *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (failure

to adequately consider subjective complaints required remand where the ALJ "made no mention of the intensity or persistence of Oakes's complaints in analyzing his residual functional capacity.") (citing *Mascio*, 780 F.3d at 640); *Honeycutt v. Kijakazi*, No. 5:20-CV-438-RJ, 2022 WL 708523, at *6 (E.D.N.C. Mar. 9, 2022) (finding the ALJ erred by failing to "explain both how he evaluated Claimant's subjective statements and his reasoning regarding the upper extremity limitations in the RFC."). Accordingly, because the ALJ failed to provide the required accurate and logical bridge from the evidence to her conclusion, this matter should be remanded for additional consideration.

## VI. CONCLUSION

For the reasons stated above, it is recommended that this matter be remanded for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 3, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum**

**and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 20th day of August 2026.

Robert B. Jones, Jr.
United States Magistrate Judge